The first case is Verdier v. Thalle Construction Company, and we are ready to proceed. Thank you. Good morning, Your Honor. May it please the Court, my name is Brooke Youngworth. I represent the appellant, Daniel Verdier, the plaintiff in the underlying action with respect to this appeal. This action arises under the Employment Retirement Income Security Act to recover benefits owed to appellant under a deferred compensation plan. Appellant feels that the District Court's determination pursuant to Federal Rules of Civil Procedure 56C, which granted in part and denied in part his motion for summary judgment, and to amend the complaint against his former employer, Thalle Construction, was incorrect, and that the Court should have granted his motion for summary judgment in its entirety. In the alternative, he believes that the Court should have allowed him to amend his complaint to include punitive damages. Isn't the second paragraph of Exhibit B just a full vesting provision? We believe that the actual purposes of Exhibit B— No, no, no, no. In reading it, why isn't that just a full vesting provision? So whatever you have in the prior paragraph as a matter of percentage, you're fully vested in that at the age of 65? First, it's not clear whether this Exhibit B even applies to our client. This exhibit only applies if the individual terminates his employment. It does not say that it applies to him if he retires before he's the age of 65. So you're going back to Paragraph 1? Correct. In that paragraph—well, actually, it's not Paragraph 1. It is Paragraph 6. It's the end of— Which paragraph? It is Paragraph 6. And it states that if his employment terminates before his retirement, then that exhibit, Schedule B, applies. You're saying that the word terminate means what? We believe that terminate means he leaves for other employment, he's fired, but not that if he decides to retire before the age of 65. Why doesn't terminate mean leaves for any reason? Terminate doesn't mean fire. Terminate just means ends. Well, because of the three words after terminates, which says before his retirement. So we believe that that entitles him to retire at any age, just not receive his benefits until he's 65. By your interpretation—and I'm just trying to make sure I understand it—if an employee worked at the company for two years, they would be entitled to full retirement benefits when they reached age 65? And left after two years. Oh, and left after two years. So, no, I believe that still Schedule B—well, do you mean if he retires after two years? Yes, yes, you just said somebody works for two years and then retires or says, I'm leaving because I'm retiring. I mean, I don't know quite what that means at some age, but he, she does that. And according to this, you think that it's ambiguous and that the person should get full benefits? No. There was—I know that the court, the district court, didn't look at any extrinsic evidence. But if the court had and found that the court was— No, no, no, no. I'm focused on this language. And the reason I went back to paragraph one is that it says after normal retirement. Correct. And it does say that he would obtain that amount following his normal retirement date. We believe normal retirement date and retirement are two different things. If this agreement had had definitions, then it would have been much clearer to our client if they meant the same thing. And I think that's really the crux of our argument, is that to the normal average reader, that is not a lawyer— So now you're relying on the difference between retirement and normal retirement. Well, we believe that—well, because there's no definitions, it would not be clear to the average reader whether those are the same thing. That's really the question of whether an average reader just looking at this wouldn't read it in the way Judge Lohier said in the first place of just saying, you know, if somebody has retired at retirement age, then even if they haven't spent 40 years, they get the full amount. And that that's what that clause is there to protect. But that the other is a very definite and reasonable way of saying you get according to the number of years you've spent. Isn't that what almost anybody would read? You know, it's a clever argument you've made, I must say. But I just wonder if it is enough to make something ambiguous. Well, I also think that it's ambiguous in the way that an average reader may not know what that vesting provision means. That vesting provision could be there to calculate the interest that accrues on his deferred compensation. Unfortunately, I know that the Court did not rely on any extrinsic evidence. But our client, as well as another expert, believed that that was not just a vesting schedule that, you know, applied at all points in time. And I just think that, you know, we can't look at it as the way that a judge or that a lawyer would. It's really how this average individual would have looked at it. And, you know, it's not clear. I know that the Court reasoned that nothing in the agreement led the Court to conclude that 100 percent of the retirement benefit is equivalent to 100 percent of a non-affordable interest in a retirement benefit. Yet, conversely, there's nothing in the agreement that could lead the Court to conclude the opposite. There's no definitions at all. And I really think the issue is not whether or not to us we can kind of parse through it and decide, you know, what the parties meant. But really, whether or not an employee could decide what it meant. In addition, we believe that the Court in determining. I just wonder whether an employee reading something like this doesn't get more out of it just as it is than if you had this and then you had another page somewhere else full of definitions which an employee would have to go look at. And almost every definition that you have would create its own problems. I mean, just realistically, isn't this a pretty clear statement to somebody who's going to go to work and says, oh, yeah, I understand. If I do this, I get this. If it isn't 40 years when I reach retirement age, I'm still fully covered. And that's it. I think that that's a fair statement. If the agreement did read like that, I think because that schedule, well, first, because retirement, the same words weren't used throughout the document, retirement and, you know, normal retirement age. As well as because there are these superseding provisions on Schedule B that are very confusing and were very confusing to our client. It is true that the word notwithstanding is not helpful. Correct. That is not helpful. And I also think the fact that it states, you know, fully vested, it says 100% of non-forfeitable interest. I think the fact that those words are not defined, that's very confusing to somebody that, you know, isn't. Explain to me what the possible basis for punitive damages are in an ERISA situation like this. I know that they are typically not granted. I acknowledge that. However, they are granted in cases of extreme disloyalty or fraud. If the court had looked at the extrinsic evidence, it would see that this plan, it was not funded and the employees were not told that it would not be funded. They also were told that they would obtain the full amount of their benefit even if they retired early. It looks like they are. No matter how old. No matter how old they were as long as they retired and were not terminated or left for other employment. Also, there were a number of payments to other employees in lump sums that were the actual total amount that that person would have obtained if they had stayed all the way through their employment. That coupled with the fact that FAIL ignored all of our clients' requests for payment. But basically you're saying that there is nothing on the record as we have it now that supports punitive damages. What you're saying is if we buy your first argument and then bring in extrinsic evidence, there might be such evidence on the basis of which so unusual a thing as punitive damages might be granted. So that really becomes, is contingent on our buying your first argument and letting it go to an extrinsic evidence situation. Well, not necessarily. I still think that punitive damages could be awarded based on the fact that FAIL did not respond to our client's request for payment and that they didn't concede liability until two years after he was owed payment. So I think that punitive damages could be awarded for that reason. Just on the basis that when you first asked, they didn't give, and then only after you sued, they came in so that we should give punitive damages because they imposed on you a duty to sue before they came in with a settlement of 123 plus. Right. And it wasn't like he asked and then we sued right away. He asked for a number of years. So that is the reason why we think that punitive damages should be awarded. We also believe, oh, I still have time. Okay. I don't think you still have time. Oh, I don't? Oh, too bad. Do you want to take a sentence to sum up? Oh. We also believe that attorneys' fees, full attorneys' fees should have been awarded as they were reasonable as well as the fact that prejudged interest should have been awarded because the parties did stipulate that we were entitled to that before filing our motion for summary judgment. Thank you. Thank you. May it please the court. My name is Richard Winn. I am general counsel for Tully Construction Company, Inc. Thale is one of the Tully construction companies. Tully obtained Thale at the request of one of Tully's sureties in 2013. And the purchase was done very quickly with very little due diligence. And I must say, as a matter of fact, we never heard of any of these deferred compensation plans until after the litigations began. Is that a defense of the plan? No. I'm just telling you what the facts are, Judge. It's not a defense at all. I think it's very clear that Judge Roman was correct in saying that 100 percent of a non-forfeitable interest in the retirement benefit as defined by this plan gives Verdier a claim under the plan. Well, it would be a very odd plan to have somebody who chose to retire after two years get 100 percent. He doesn't get anything under this plan. But the question that opposing counsel has put is, is this sufficiently ambiguous in the sense of saying termination and then retirement as against normal retirement so that extrinsic evidence – so that it is ambiguous enough to allow extrinsic evidence? Now, she has said some things about extrinsic evidence which are not in the record, and so I don't know what to say about them. But if it were sufficient, I suppose one would – to say it's ambiguous, I suppose one would say, okay, it takes mighty strong extrinsic evidence, but if it happened to be there, okay. Why isn't that what perhaps we should do? I must say I'm quite surprised, but . . . It's an interesting argument, but I don't think it's valid when you look at this particular plan. And I think it's very interesting, Judge – Dean Calabresi, that there's another case in this district which interpreted this particular plan, and that was a case that was cited by Judge Roman on page five of his decision as giving the court subject matter jurisdiction. That's the Piorazzo case, and if you look at the Joint Appendix on Appeal, you will find a letter written by Mr. Vergier to Mr. Piorazzo. It's page A61 of the Joint Appendix. It's dated December 20, 1993, and it's a Dear Joe letter, and it asks for information with respect to the deferred compensation plan. And we found out before the Vergier case that Mr. Piorazzo had also brought action under this case. Mr. Winn, would you explain to me what work the word notwithstanding the provisions of the preceding paragraph, and really I'm focused on the notwithstanding part, what work does that do? I think it does nothing. Really? I really don't. I mean, I didn't draw the plan. I don't think I would have used that phrase. So when you say you wouldn't have used that phrase, why not? Because it is clear what it is saying is that in the first paragraph it says, look, you're entitled to a non-forfeitable percentage of your final benefit. You get nothing if you work for 10 years. If you work for at least 10 years, you get 25%, and not only that, you get 2.5% for every year that you work beyond that. That is the benefit if you leave the company for any reason other than death or disability. Once you reach your 65th birthday, you're entitled to a plan. I think you have to do more than say the word notwithstanding could be there or not because we are required to give every word a meaning if possible. Now, a possible meaning is despite what it says above for people who don't work more than a certain number of years, somebody who retires at the actual retirement age gets the full amount notwithstanding the fact that he doesn't have, she doesn't have the 40 years. Now, that gives a meaning to notwithstanding and still comes out. So I think that's the argument you have to say. You can't tell us notwithstanding is a useless word because if it's a useless word, then we have to say, hey, that's something wrong. No, I think what it says is that if you work for 10 years, you get a non-forfeitable benefit. If you work for one year or two years and retire, you get absolutely nothing. I think that's what they were trying to say. And what I was trying to say to you, Dean Calabresi, is that in the Piorazzo case, there was, as in this case, a stipulation of liability. And in that case, Mr. Piorazzo, whom Mr. Verdier considered to be very knowledgeable about this deferred compensation plan because he asked him a question about this deferred compensation plan, used the integrated formula. He used the last five years of his benefits. He had worked for 25 years. He got 10% plus the 25 times 2.5. If he had followed Mr. Verdier's interpretation, instead of getting $3,100 a month, he would have gotten $5,700 a month. He would have gotten another $250,000 more. It was his interpretation that because he retired before he worked 40 years, he would have to work 40 years to get the full 100% benefit under this plan. So he retired at age 65? No. He retired in 2001 and began to get benefits in 2012. It's exactly the same case that we have here. I guess I'm puzzled by why you're resisting my colleague's interpretation, which is different than the one you're proffering, but it seems to me does effectuate the language of the provision. Well, I don't think I'm really differing with the interpretation. Perhaps it's ‑‑ You're saying that whatever the notwithstanding goes to, the previous part is not ambiguous. That's correct. That is exactly what I'm saying. And in this particular case, shortly after, I should say during the middle of depositions, FAIL stipulated to its liability, and it made a lump sum payment for the 25 months that it hadn't paid the benefits, and it gave 9% interest on that lump sum payment. So since August of 2015, Mr. Verdier has received every penny that he would have got, plus he got 9% interest on the first 25 payments that were late, and the legal fees have been paid since the date that Judge Roman came down with this particular decision. As far as the punitive damages are concerned, I saw no cases, Judge Roman saw no cases, which would call for punitive damages in this particular situation for fraud or extreme disloyalty. I believe the one case that was cited did not come to the conclusion that there would be punitive damages in a case such as this. And as far as the issue of attorney's fees? Yes, I'm going to right now. As far as attorney's fees are concerned, if the plaintiff achieves some success on the merits, it's discretionary and he is entitled to attorney's fees. Now, Verdier in this case prevailed only in a technical sense, but not on the amount of damages, which was the only issue meaningfully in dispute after August of 2015. And half of the fees that Mr. Rapelier claimed were generated in litigating the amount of damages. So when he reduced the fees by 20%, after Judge Smith had reduced them by 25%, it's more than reasonable since about 50% of the legal fees were incurred in litigating the amount owed to Verdier, which is the critical issue in this case and which Mr. Verdier lost for those reasons. Something is due to the attorney if in order to start getting payment, you had to bring suit. Absolutely. And that may explain why there isn't a deduction of 50% but only of 20%. I understand that logic and they have been paid. They have been paid from the minute that the decision was rendered by Judge Roman. Thank you very much. Very interestingly argued. Yes, we'll take the matter under advisement.